UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STEPHEN M. DEANE,

    Plaintiff,

    v.

RON NEAL, et al.,

    Defendants.

CAUSE NO.: 3:19-CV-153-PPS-MGG

OPINION AND ORDER

Stephen M. Deane, a prisoner without a lawyer, filed a motion for a preliminary injunction. He seeks to be sent to an outside consultation in relation to the medical treatment for a recurring wound on his left foot. "The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

In the instant motion, Deane alleges that he has suffered a reoccurring wound on his left foot since May 2015. Since April 2017, Deane has been under the care of Dr. Nancy Marthakis at the Indiana State Prison, but she has examined Deane's foot on only

two occasions. In November 2018, Dr. Marthakis ordered X-rays and diagnosed the injury as a tailor's bunion but said that "we don't fix bunions." On February 25, 2019, Dr. Marthakis told Deane that his request for an outside consultation was denied by Wexford Medical Services until other measures were attempted, including periodic debridement,[1] continued use of crutches, and a transfer to a different dorm. When Deane refused the periodic debridement, Dr. Marthakis forced him to accept or reject the treatment plan as a whole. When he refused to accept the entire treatment plan, she confiscated his crutches, discontinued his enrollment in the chronic care clinic for wound care, and refused to consider other diagnoses, such as chronic osteomyelitis.

Deane also maintains that, since his last appointment with Dr. Marthakis. medical staff is refusing to treat him. He cites a medical request from April 26, 2019, in which he asks to see an outside specialist. ECF 28-1 at 4. The nurse responded that medical staff might be able to send him to one if he would follow the recommended plan and to inform the medical unit if was willing to do so. *Id.*

In response, the Warden argues that medical staff has frequently treated Deane's wound and that his objections to the recommended course of treatment are based solely on his subjective belief. The Warden has also attached medical records, which indicate as follows. On July 13, 2018, at a chronic care visit with Dr. Marthakis, Deane complained of a persistent callous near the base of the little toe on his left foot. ECF 46-1 at 378-80. She recommended gym shoes with gel insoles, ordered X-rays, and prescribed

---

[1] Debridement is the removal of dead or infected skin tissue to help a wound heal. Healthline, https://www.healthline.com/health/debridement (last visited June 14, 2019).

Tylenol. *Id.* On July 19, Dr. Marthakis prescribed antibiotics, including Rocephin and Bactrim, and arranged for a wound care nurse to meet with Deane twice per week. *Id.* at 383-84.

On October 25, 2018, Diane Thews, a nurse, examined Deane's left foot, observing a callous with an open wound with redness, light yellow drainage, and red streaks on the foot. *Id.* at 395-97. Deane reported that he had once had osteomyelitis on his left foot. *Id.* Nurse Thews continued Deane on antibiotic and with wound care and ordered another X-ray. *Id.* On October 26, X-rays revealed that the wound resulted from a tailor's bunion.[2] *Id.* at 398. On November 2, Dr. Marthakis placed Deane on non-weight bearing status to alleviate pressure on the wound. *Id.* at 403. On November 5, Deane reported that his shoes continued to rub and irritate his wound, and Dr. Marthakis ordered crutches. *Id.* at 409-10. On November 7, a nurse noted that the prison did not have a sufficiently wide shoe to accommodate Deane's wound. *Id.* at 416-17. Deane reported that, in 1999, X-rays revealed that he had osteomyelitis. *Id.* On November 19, Dr. Marthakis extended her order for crutches and non-weight bearing status for another two weeks. *Id.* at 437. On November 28, Dr. Marthakis decided to custom order shoes for Deane. *Id.* at 448-50.

On January 4, 2019, Dr. Marthakis met with Deane for a chronic care visit and noted that the custom shoes had been ordered and that he had received daily wound

---

[2] A tailor's bunion is a bony lump that forms on the outside of the foot at the base of the little toe. Healthline, https://www.healthline.com/health/tailors-bunion (last visited June 14, 2019). It is typically caused and exacerbated by poorly fitting footwear. *Id.*

care. *Id.* at 184-86. She also ordered additional X-rays of the left foot. *Id.* On January 9, Deane received the custom shoes. *Id.* at 193. On January 14, Dr. Marthakis noted that X-rays revealed no osteomyelitis in the left foot.[3] *Id.* at 209. On January 15, Dr. Marthakis prescribed Tylenol due to Deane's complaints of pain. *Id.* at 215. On January 17, Dr. Marthakis noted a lack of improvement, prescribed Mobic, and submitted a request for a referral to a podiatrist. *Id.* at 223-25. On January 24, medical staff renewed Deane's low floor pass. *Id.* at 236. On January 25, medical staff photographed the wound and sent the images to support the referral request, and Dr. Marthakis ordered additional X-rays, which revealed no significant changes. *Id.* at 241-46, 253.

On February 19, 2019, an alternative treatment plan was proposed in response to the podiatry referral. *Id.* at 268-69. This plan included sharp debridement, non-weight bearing status, placement in another dormitory, a change in medication, and no footwear on the left foot. *Id.* On February 22, medical staff provided Deane with crutches to facilitate his non-weight bearing status. *Id.* at 278-79. On February 25, Deane refused to comply with the treatment plan. *Id.* at 282-88. She discontinued wound care and crutches but invited him to submit a medical request if he wanted to resume treatment for the wound. *Id.*

On May 9, 2019, Deane submitted a medical request to complain about the foot wound. *Id.* at 291-92. The nurse observed a dime-sized closed wound with no drainage,

---

[3] Osteomyelitis is an infection of the bone, typically caused by staphylococcus aureus, a staph bacteria. WebMD, https://www.webmd.com/diabetes/osteomyeltis-treatment-diagnosis-symptoms#1 (last visited June 14, 2019).

4

swelling, redness, or any sign of infection. *Id.* The nurse applied antibiotics and bandages but refused Deane's request for his own wound care supplies. *Id.* On May 10, Deane submitted another medical request, and a nurse examined the wound. *Id.* at 294-96.

To obtain a preliminary injunction, Deane must show that he has a reasonable likelihood of success on the merits. Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to a serious medical need, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a

5

judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

The record indicates that Dr. Marthakis and Deane discussed the left foot wound for the first time in July 2018. At that time, she ordered X-rays, prescribed antibiotics and pain medication, recommended gym shoes and insoles, and arranged regular wound care for plaintiff. On October 25, X-rays revealed that that wound resulted from a bunion. X-rays also confirmed the absence of osteomyelitis. To alleviate pressure on the wound, Dr. Marthakis responded by placing him on non-weight bearing status and ordering him to use crutches for about a month. When informed that the prison did not have medically appropriate shoes for Deane, she custom ordered shoes for him. When Dr. Marthakis noticed a lack of improvement after Deane received the new shoes, she submitted a referral request for a podiatry referral. To this point, the record contains no indication of deliberate indifference but indicates Dr. Marthakis responded reasonably by finding that a tailor's bunion caused the wound and by pursuing new treatment options once other options proved ineffective.

In response to the referral request, Dr. Marthakis was advised to proceed with a more conservative treatment plan. On February 25, 2019, she presented this plan to Deane, and he refused to undergo the debridement procedure. She responded by removing him from wound care and taking his crutches. While it is possible that she made these decisions out of spite as Deane alleges, it seems unlikely because she also

6

invited him to submit a medical request if he wanted to resume treatment. Instead, it appears that Dr. Marthakis simply considered the wound care, crutches, the new dorm assignment, non-weight bearing status, and debridement as parts of a single inseverable treatment plan, which Deane had refused.

Moreover, the record contains three medical requests since that time, which indicate that medical staff are willing to treat Deane and that he has suffered no harm as a result of Dr. Marthakis' decisions. On April 19, 2019, he submitted a request asking for an outside consultation. The nurse responded that he may be able to see an outside specialist if he complied with the treatment plan and to let medical staff know if he was willing to do so. On May 9, he submitted a request to complain about his wound, and a nurse responded by applying antibiotics and bandages to his wound. The nurse also observed that the wound was closed with no signs of infection. On May 10, he submitted another request, and another nurse examined his wound. Therefore, the record does not suggest that medical staff are acting with deliberate indifference to Deane's left foot wound, and I find that he has not shown a reasonable likelihood of success on the merits.

Additionally, Deane's allegations of irreparable harm are simply unfounded. He alleges that medical staff refuse to identify the cause of the wound, but medical staff examined and X-rayed the wound on numerous occasions, determined that it was a tailor's bunion exacerbated by friction with footwear, and ruled out osteomyelitis. He alleges that debridement will cause pain, infection, amputation, or death, but Deane offers no evidence or expert qualifications to support this allegation. He alleges that

medical staff have refused to treat him since February 25, 2019, but the record reflects that they have treated his wound and provided reasonable responses to his medical requests. Moreover, there is no indication from the most recent examinations that the wound requires immediate care. Consequently, Deane has not shown that he will suffer irreparable harm absent an outside consultation.

Finally, with respect to the competing and public interests, unnecessary intrusions into the management of prisons are generally disfavored. See 18 U.S.C. § 3626(a) (prison-related injunctions must be necessary to remedy the violation and narrowly tailored); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) ("Prison officials have broad administrative and discretionary authority over the institutions they manage."). In sum, Deane has not shown that he is entitled to a preliminary injunction.

For these reasons, the court DENIES the motion for a preliminary injunction (ECF 28).

SO ORDERED on June 17, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT